```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 13-62452-Civ-GAYLES
                              MAGISTRATE JUDGE P.A. WHITE

WILLIAM MOORE,                :

     Petitioner,              :

v.                            :    REPORT OF
                                   MAGISTRATE JUDGE
JULIE L. JONES¹,              :

     Respondent.              :
_____
```

## I. Introduction

William Moore, who is presently confined at Hardee Correctional Institution in Bowling Green, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 attacking his conviction in case number 2003-CF-19068 from the Seventeenth Judicial Circuit Court for Broward County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the amended petition for writ of habeas corpus with a memorandum and exhibits, the respondent's response to an order to show cause with appendix of exhibits and the petitioner's reply thereto.

## II. Procedural History

---

[1] Julie L. Jones became Secretary of the Florida Department of Corrections on January 5, 2015 is substituted as party pursuant to Fed.R.Civ.P. 25(d).

1

The petitioner was charged with one count of burglary of a conveyance, one count of attempted burglary of a conveyance, one count of petit theft and one count of possession of burglary tools. (DE# 30-1, p. 2-3). The possession of burglary tools charge was dismissed prior to trial. (DE# 30-1, p. 4).

On November 14, 2003 at approximately 4:30 a.m. the petitioner was observed breaking into cars in front of Brenda Miller's home. Miller first observed the petitioner as he approached the front of her home, he was riding a child's bicycle. (DE# 30-2, p. 300). He placed the bike in some bushes and proceeded to enter a car and take something from inside the car. (DE# 30-2, p. 301-305). He then attempted to enter a second car. (DE# 30-2, p. 303). As he was at the second car he responded to the lights of an approaching car by getting on his bike and riding away. The approaching car was police car responding to Miller's call. (DE# 30-2, p. 306). The police responded within 45 seconds to a minute. (DE# 30-2, p. 248, 279).

The first officer on the scene stopped the petitioner because he matched the description he had received from the dispatcher. (DE# 30-2, p. 248). The petitioner had in his possession two flashlights and a leatherman tool. (DE# 30-2, p. 255). The petitioner was arrested. A short time later, Miller identified the petitioner as the person whom she had seen breaking into the cars. (DE# 30-2, p. 254). The owner of the vehicle that had been broken into identified the items found on the petitioner as having been in his vehicle. (DE# 30-2, p. 293-297).

One of the police officers was observed dusting the vehicles for fingerprints, however there was no testimony regarding his findings. (DE# 30-2, p. 283). Also, although Miller testified that she saw the petitioner on a bicycle, on cross examination the

officers testified that they did not see a bicycle. (DE# 30-2, p. 261, 285). Petitioner's counsel argued both these points in closing argument. (DE# 30-2, p. 334-335).

The jury returned a verdict of guilty on the three charged offenses. (DE# 30-2, p. 406-407). The petitioner was adjudicated guilty and sentenced to a total sentence of 15 years. (DE# 30-1, p. 4). The sentence consisted of 15 years on the burglary charge as a violent career criminal, 10 years on the attempted burglary charge as a habitual felony offender and 6 months on the petit theft charge. All sentences were made concurrent. The 15 year sentence included a 10 year mandatory minimum on the burglary charge as a violent career criminal. The petitioner appealed.

On appeal the petitioner raised two issues. (DE# 30-1, p. 23-82). He argued that the trial court abused its discretion by denying his pro se motion for continuance to obtain further discovery and retain new counsel. He also argued that the trial court erred in sentencing him as a violent career criminal. The appellate court affirmed the petitioner's conviction but vacated his violent career offender sentence, finding that the state had not properly established the necessary prior convictions. Moore v. State, 944 So.2d 1063 (4th DCA 2006). The appellate court permitted the state to present additional evidence at re-sentencing. Id.

On re-sentencing the state was able to establish the prior convictions and the trial court reimposed the violent career criminal sentence. The sentence was affirmed on appeal.[2] Moore v. State, 984 So.2d 1262 (4th DCA 2008).

---

[2]The trial court subsequently granted a motion to correct sentence. The new sentence on Count 2 was vacated and the original sentence was reimposed.

While the appeal was pending the petitioner filed a motion for post conviction relief under Fla.R.Crim.P. 3.850. This motion was dismissed without prejudice. An amended motion with a memorandum was then filed in which the petitioner raised four enumerated claims. (DE# 30-1, p. 182-223). In his first claim he argued that he was deprived of due process through the use of perjured testimony of police officers. In his second claim he argued that he was denied due process by the withholding of a report of the latent fingerprint analysis. In his third enumerated claim he actually raised six claims of ineffective assistance of counsel. He contended that counsel was ineffective for (1) failing to any file pretrial motions to compel production of the fingerprint analysis; (2) failing to impeach the state's witnesses; (3) failing to file any pretrial motions to compel the production of the 9-1-1 transcript; (4) failing to file a motion for continuance; (5) failing to file a motion to suppress the officers allegedly perjured testimony; and (6) failing to provide the petitioner with all discovery. In his fourth enumerated claim the petitioner contended that his sentence was illegal.

The state filed a response arguing that all of the claims raised were procedurally barred as they could have and should have been raised on direct appeal. (DE# 30-1, p. 159-180). The state argued that the ineffective assistance of counsel claims were simply restatements of his first and second enumerated claims. The state further argued that the petitioner had failed to establish either deficient performance or prejudice on the merits of his ineffective assistance of counsel. The state argued that the claim of an illegal sentence was not properly raised in a 3.850 motion. The state trial court denied the motion for the reasons set forth in the state's response. (DE# 30-1, p. 157). The denial of this motion was affirmed in summary fashion. <u>Moore v. State</u>, 120 So.3d

4

569 (Fla. 4th DCA 2013). Mandate issued on October 11, 2013.

The petitioner filed the instant petition on November 4, 2013.[3] He raises four enumerated claims, his third enumerated claim includes six subclaims of ineffective assistance of counsel. The claims raised in the instant petition are essentially identical to those raised in his motion for post conviction relief filed in state court.

### III. Statute of Limitations and Exhaustion

The state properly concedes that the petition was filed timely and that all the claims raised in the petition have been exhausted in state court.

### IV. Procedural Bar

The state contends that the claims raised are procedurally barred because the state court, in its order denying the motion for post conviction relief, adopted its argument that the claims were barred. The state, citing Kight v. Singletary, 50 F.3d 1539 (11th Cir. 1995) and Tower v. Phillips, 7 F.3d 206 (11th Cir. 1993), argues that if a state claim is procedurally barred and the state court affirms without opinion, it is reasonable to assume that the state court applied the procedural bar. However, in the instant case it is not clear that the state trial court simply applied a procedural bar to the claims. The state trial court entered a simple order adopting the arguments presented in the state's response. The state's arguments included both procedural bar arguments and merits arguments, hence the last state court judgment did not "clearly and expressly" state that its judgment was based

---

[3] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

on a procedural bar and the procedural bar will not be applied to the petition. See Ylst v. Nunnemaker, 501 U.S. 797 (1991) and Harris v. Reed, 489 U.S. 225 (1989)

## V. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme

Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

The petitioner raises several claims of ineffective assistance of counsel. The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id. In the context of a guilty plea, the second prong of the Strickland test requires a showing that but for counsel's errors, the movant would not have pleaded guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

Combining AEDPA's habeas standard and Strickland's two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, a petitioner must show the state court "applied Strickland to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. Bell v. Cone, 535 U.S. 685, 699 (2002).

## VI. Discussion

The petitioner's first, second and third claims rest upon his contention that the prosecutor knowingly presented perjured testimony of the police officers and improperly withheld exculpatory evidence. As will be discussed below neither of these contentions is correct.

## Giglio[4] Claim

The petitioner contends that the prosecutor presented perjured testimony. In support of this contention the petitioner points to Miller's testimony and argues that the transcript of her 9-1-1 call was not provided for impeachment. He alleges that the transcript would have established that the officers lied in their testimony about the description they received of the perpetrator.

It is apparent that the content of Miller's 9-1-1 call was known to the petitioner and was presented at trial. The

---

[4]Giglio v. United States, 405 U.S. 150 (1972).

petitioner's counsel addressed the description of the perpetrator provided by Miller in her call. Discrepancies between her description and the officer's descriptions were addressed by counsel. On cross examination the officers were asked if they ever saw a bicycle and asked what clothing the perpetrator was wearing. Similarly, on cross examination Miller was asked about her description of the clothing the perpetrator was wearing. In short all of the evidence in the 9-1-1 call that the petitioner contends supports his argument that the officers lied was presented at trial.

"In order to prevail on a Giglio claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir.1999). Here there was no presentation of perjured testimony. At best there were minor discrepancies in the description of the petitioner as relayed to the officers responding to the dispatch call. These discrepancies were fully explored during the course of the trial. The petitioner has not established that the officer's testimony was false, nor has he shown that any falsehood was material. Furthermore, the petitioner ignores the significant evidence of guilt. The petitioner was observed in the act, he was positively identified by person who observed him, he was apprehended within a minute of the burglary and had in his possession items that were taken from the burglarized vehicles. Since there was no Giglio violation, this claim should be denied.

Brady[5] Claim

The petitioner also contends that the prosecution withheld the

---

[5] Brady v. Maryland, 373 U.S. 83 (1963)

results of the fingerprint analysis. He contends that this evidence was exculpatory. The petitioner puts great stock in the argument that the if the fingerprint analysis had been presented it would have proven that someone else committed the crimes.

The petitioner's Brady claim[6] is without merit. First, the petitioner has failed to show that the government possessed evidence that he was unaware of at trial. It was established at trial that one of the officers had dusted for fingerprints, but there was no testimony of the results of the analysis. The petitioner used the lack of fingerprints to argue reasonable doubt. Next, the petitioner has not established that the evidence was exculpatory. He has not shown that any useable latent fingerprints were found nor that the existence of some other fingerprints would establish that some other person committed the burglaries. At best the existence of other latent fingerprints would show that other people had touched the vehicles that had been burglarized. Finally, the evidence of the petitioner's guilt was substantial. Thus, there was no reasonable likelihood that the disclosure of the latent fingerprint analysis would have altered the outcome at trial. Since there was no <u>Brady</u> violation this claim should be denied.

<u>Ineffective Assistance of Counsel Claims</u>

---

[6] A <u>Brady</u> claim "involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976)(emphasis added). In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a <u>Brady</u> violation must demonstrate (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. <u>United States v. Severdija</u>, 790 F.2d 1556, 1558 (11 Cir. 1986). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. <u>United States v. Alzate</u>, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), <u>quoting</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>United States v. Stewart</u>, 820 F.2d 370, 374 (11 Cir. 1987)(same).

The petitioner has raised a total of six claims of ineffective assistance of counsel. Of these six claims, five are directly related to the same contentions underlying the petitioner's first two claims, to wit: the officers presented perjured testimony and the fingerprint analysis was exculpatory.

In his first claim of ineffective assistance of counsel the petitioner contends that counsel failed to obtain the fingerprint analysis. As discussed above in Claim 2, the fingerprint analysis was not exculpatory. The failure to obtain such non-exculpatory evidence was not deficient performance. In fact counsel argued that the lack of latent fingerprints cast doubt upon the petitioner's guilt. Since the fingerprint analysis was not exculpatory, the petitioner was not prejudiced by counsel's failure to obtain the evidence. Since petitioner failed to satisfy either prong of the Strickland analysis the state court properly denied this claim.

The petitioner's second, third and fifth claims of ineffective assistance of counsel rely upon his contention that the 9-1-1 transcript would have established that the officers presented perjured testimony. As discussed above in Claim 2, the petitioner and counsel were aware of the contents of the 9-1-1 call and he was not prejudiced by not having the transcript of the 9-1-1 call.

The petitioner claims counsel failed to impeach the witnesses with the 9-1-1 call. Contrary to this contention, counsel used his knowledge of the 9-1-1 call in his cross examination of the officers and the eyewitness. He utilized the minor discrepancies to argue that the police had arrested the wrong person. This is exactly the argument the petitioner is now making. His claim that counsel failed to impeach the witnesses is without merit and was properly denied by the state court.

The petitioner claims that counsel was ineffective for failing to compel the production of the 9-1-1 transcript. This claim is without merit as the record shows that counsel was well aware of the content of the 9-1-1 call. The petitioner has failed to establish the he was prejudiced by the failure of counsel to obtain the actual transcript of the call where counsel had knowledge of the contents of said call and used that knowledge in his cross examination of the prosecution's witnesses.

The petitioner also claims that counsel was ineffective for failing to suppress the officer's testimony, arguing that the testimony was perjured. Again, as discussed above with regard to Claim 1, the petitioner cannot establish that the officer's testimony was perjured. Any discrepancies in the testimony of the officers and the eyewitness were explored on cross examination and used to argue reasonable doubt in closing argument. Counsel had no grounds to file a motion to suppress the officers' testimony and cannot be ineffective for failing to pursue such a non-meritorious claim. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001); United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999).

In his sixth claim of ineffective assistance of counsel the petitioner contends that counsel was ineffective for failing to provide him with a copy of all discovery including the 9-1-1 transcript and the fingerprint results. While petitioner generally mentions other discovery, his primarily focuses his argument on the 9-1-1 transcript and fingerprints.

As has been discussed previously, neither the 9-1-1 transcripts or the fingerprint analysis was in the possession of the petitioner's counsel. Since counsel did not have these items in his possession he cannot be found ineffective for failing to share

12

them with the petitioner. To the extent that the petitioner is arguing that counsel was ineffective for failing to obtain these two items, that claim is repetitive of prior claims and has been addressed above. Finally, the record reflects that counsel advised the court that he had provided the petitioner with copies of all discovery. (CE# 30-2, p. 227-228).

In his fifth claim of ineffective assistance of counsel the petitioner argues that counsel was ineffective for failing to move for a continuance to obtain additional transcripts and discovery. This claim is lacking in specificity in that the petitioner fails to identify what additional transcripts and discovery counsel could have obtained with a continuance. The record shows that counsel had received all the transcripts and discovery prior to trial.

A review of the records reflects that counsel had at least a month to prepare for trial and the case had been previously handled by a different public defender who had taken depositions. Although counsel expressed concern that he had not received the final two transcribed depositions, he later advised the court that he would have the transcripts in time to prepare for trial. (DE# 30-2, p. 56). Prior to opening statements counsel had reviewed the deposition transcripts. (DE# 30-2, p. 227-228). According to the statements of counsel, he was prepared for trial and raised no basis for a continuance. Since there has been no showing of a need for a continuance, the petitioner has not established that counsel's performance was deficient or that he was prejudiced by counsel failure to request a continuance. This claim was properly denied by the state court.

None of the petitioner's claims of ineffective assistance of counsel have merit. The state court's denial of these claims was

13

not contrary to, nor an unreasonable application of, the Strickland standard for evaluating ineffective assistance of counsel claims. Each of the claims should be denied.

<u>Illegal Sentence</u>

In his fourth enumerated claim the petitioner contends that the state court imposed an illegal sentence. The petitioner argues this claim as if he were sentenced under the federal sentencing guidelines. All of the cases cited by the petitioner address the application of the federal sentencing guidelines in federal court. His reliance on these cases is misplaced as he was sentenced in state court under state law.

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)(holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief). Moreover, a state's interpretation of its own rules or statutes does not raise a federal constitutional issue unless it rises to a level of denial of fundamental due process. <u>Wainwright v. Goode</u>, 464 U.S. 78 (1983), <u>reh'g</u> <u>denied</u>, 465 U.S. 78 (1984). <u>See also</u> <u>Redman v. Dugger</u>, 866 F.2d 387 (11 Cir. 1989); <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1433 (11 Cir. 1985); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11 Cir. 1983).

When a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254; <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975)(per curiam). The application of the habitual felony offender sentencing enhancements is a question of state law. The Eleventh Circuit has consistently

held that federal courts cannot review a state's alleged failure to adhere to its own sentencing provisions. Branan v. Booth, 861 F.2d 1507 (11 Cir. 1988). Federal habeas corpus review of a state law claim is, therefore, precluded if no due process violations or facts indicating such violations are alleged. A state court's error in applying its own sentencing provisions is not cognizable on federal habeas corpus review, even when it is "couched in terms of equal protection and due process." Id. at 1508, quoting Willeford v. Estelle, 538 F.2d 1194, 1996-98 (5 Cir. 1976). Therefore, a state decision affecting only the sentencing rights of prisoners under state law is of no consequence in relation to a federal habeas corpus application. The petitioner's challenge to the state court's application of state law at sentencing is not reviewable in this proceeding and should be denied.

## VII. Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that

reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no Certificate of Appealability issue and the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 3rd day of February, 2015.

*[signature]*
UNITED STATES MAGISTRATE JUDGE

cc:   William Moore
      DOC# 638704
      Hardee Correctional Institution
      Inmate Mail/Parcels
      6901 State Road 62
      Bowling Green, FL 33834

```
Melanie Dale Surber, AAG
Attorney General Office
1515 N Flagler Drive
9th Floor
West Palm Beach, FL 33401-3432
```